UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOHN T.,

                                     **Plaintiff,**

v.                                                                        20-CV-800

**COMMISSIONER OF SOCIAL SECURITY,**

                                      **Defendant.**

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment.  Dkt. No. 18.  John T. ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for benefits.  This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).  Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Dkt. Nos. 14, 16.  For the following reasons, Plaintiff's motion (Dkt. No. 14) is denied, and the Commissioner's motion (Dkt. No. 16) is granted.

## BACKGROUND

In April 2014, Plaintiff filed for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI") alleging that he became disabled in May 2010 by chronic lumbar pain, left knee injury, gout, left arm/wrist injury, depression, and high blood

pressure.  Tr. at 270, 276, 278, 280.[1]  Plaintiff's claims were denied at the initial level, and he requested review.  Tr. at 88, 100, 119.  Administrative Law Judge Benjamin Shaykin ("the ALJ") conducted a hearing on January 4, 2017.  Tr. at 26-62.  Plaintiff, who was represented by counsel, testified as did a vocational expert.  Tr. at 26-62.  The ALJ issued an unfavorable decision on March 30, 2017.  Tr. at 7-25.  Plaintiff exhausted his administrative remedies and commenced an action before this Court.  The case was remanded for further proceedings on July 31, 2019.  Tr. at 663-69.

Plaintiff appeared once again and testified at a hearing before the ALJ on January 6, 2020.  Tr. at 563-602.  Plaintiff was represented by counsel and an impartial vocational expert also testified.  On March 4, 2020, the ALJ issued a decision in which he found that Plaintiff was not under a disability as defined by the Act from May 29, 2010, through the date of his decision.  Tr. at 538-55.  This action followed.  Dkt. No. 1.

## LEGAL STANDARD

**Disability Determination**

A person making a claim for Social Security benefits bears the ultimate burden of proving disability throughout the period for which benefits are sought.  *See* 20 C.F.R. § 416.912(a); *Schauer v. Schweiker*, 675 F.2d 55, 59 (2d Cir. 1982).  The claimant is disabled only if he shows that he is unable to engage in any substantial gainful activity due to any medically determinable physical or mental impairment which has lasted, or can be expected to last, for a continuous period of at least 12 months.  42

---

[1] Citations to "Tr. __" refer to the pages of the administrative transcript, which appears at Docket No. 13.

U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.909; see *Barnhart v. Walton*, 535 U.S. 212, 216-22 (2002).

A disabling physical or mental impairment is an impairment that results from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). Congress places the burden upon the claimant to establish disability by requiring him to "furnish such medical and other evidence of the existence [of a disability] as the Commissioner . . . may require." 42 U.S.C. § 1382c(a)(3)(H)(i). The function of deciding whether a person is under a disability within the meaning of the Act belongs to the Commissioner. 20 C.F.R. § 416.927(e)(1); *Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997).

In keeping with this function, the Commissioner has established a five-step sequential evaluation for adjudicating disability claims, which is set forth at 20 C.F.R. § 416.920. The claimant has the burden at the first four steps. The Commissioner has the burden at the fifth step of demonstrating that the claimant can perform other work existing in significant numbers in the national economy; but the burden of proving disability is always on the claimant. *See* 20 C.F.R. § 416.920; *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (stating that "[t]he claimant bears the ultimate burden of proving [disability] throughout the period for which benefits are sought") (citation omitted).

**District Court Review**

42 U.S.C. § 405(g) authorizes a district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Section 405(g) limits the scope of the Court's review to two inquiries: whether the Commissioner's conclusions were based upon an erroneous legal standard, and whether the Commissioner's findings were supported by substantial evidence in the record as a whole. *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir. 2003).

Substantial evidence is "more than a mere scintilla." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (emphasis added and citation omitted). The substantial evidence standard of review is a very deferential standard, even more so than the "clearly erroneous" standard. *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447-48 (2d Cir. 2012) (citing *Dickinson v. Zurko*, 527 U.S. 150, 153 (1999)).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). If there is substantial evidence for the ALJ's determination, the decision must be upheld, even if there is also substantial evidence for the plaintiff's position. *See Perez v. Chater*, 77 F.3d 41, 46-47 (2d Cir. 1996); *Conlin*

4

*ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015).  Likewise, where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## DISCUSSION AND ANALYSIS

**The ALJ's Decision**

The ALJ analyzed Plaintiff's claims using the familiar five-step process. *Lynch v. Astrue*, No. 07-CV-249-JTC, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date.  Tr. at 544.  The ALJ concluded at step two that Plaintiff suffered from the following severe impairments:  degenerative disc disease of the lumbar and cervical spine; degenerative joint disease and sprain of the left knee; left wrist fracture status-post repair; obesity; affective disorder; anxiety disorder; and schizophrenia.  Tr. at 544.  At step three, he concluded that Plaintiff did not have an impairment or combination of impairments which met or equaled the Listings, giving special consideration to Listing 1.02 (Major Dysfunction of a Joint); Listing 1.04 (Disorders of the Spine); Listing 12.03 (Schizophrenia Spectrum and Other Psychotic Disorders); Listing 12.04 (Depressive, Bipolar, and Related Disorders), and Listing 12.06 (Anxiety and Obsessive-Compulsive Disorders).  Tr. at 544-47.

The ALJ found that from the alleged onset date until July 15, 2017, Plaintiff retained the RFC to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except he could only occasionally climb ladders, ropes or scaffolds;

occasionally climb ramps or stairs; occasionally stoop, crouch, balance, kneel or crawl; could frequently handle and finger with the non-dominate left upper extremity; was limited to simple, routine tasks; was limited to occasional interaction with supervisors, co-workers and the public; and was limited to occasional changes in the work setting. Tr. at 547. The ALJ further concluded that beginning on July 16, 2017, Plaintiff had the RFC to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except he could not climb ropes, ladders or scaffolds; could only occasionally stoop, crouch, balance, kneel, or crawl; could frequently handle and finger with the non-dominant left upper extremity; he could have no exposure to wetness or dangerous hazards such as unprotected heights or machinery; and he was limited to simple, routine tasks, to occasional interaction with supervisors, co-workers, and the public, and to occasional changes in the work setting. Tr. at 547.

The ALJ concluded that Plaintiff was unable to perform his past relevant work as material handler and a sewing machine assembler. Tr. at 553. Relying on the VE's testimony, the ALJ found, for the first relevant time period, that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including the jobs of garment sorter, marker, and for the time frame beginning on July 16, 2017, the jobs of document preparer, printed circuit board screener, and final inspector. Tr. at 554-55. Accordingly, the ALJ determined that Plaintiff had not been under a disability at any time from May 29, 2010, through March 4, 2020. Tr. at 555.

**Judgment on the Pleadings**

As noted above, the parties have cross-moved for judgment on the pleadings. Dkt. Nos. 14, 16. Plaintiff argues that the ALJ failed to reconcile Plaintiff's physical RFCs with the opinions to which he gave moderate weight and instead based the RFCs on his own lay interpretation of the raw medical data. He also contends that the date of July 16, 2017, upon which Plaintiff's condition allegedly worsened, was "completely meaningless and arbitrary." Dkt. No. 14-1, p. 23. For the following reasons, this Court finds that remand is not warranted.

**Relevant Opinions**

Consulting examiner Dr. Samuel Balderman examined Plaintiff on June 1, 2011. Tr. at 355. Dr. Balderman found that Plaintiff appeared to be in no acute distress, had a normal gait, could walk on his heels and toes without difficulty, had a "squat 80% normal of full," had a normal stance, used no assistive devices, needed no help changing or getting on and off the exam table, and was able to rise from the chair without difficulty. Tr. at 356. Regarding Plaintiff's musculoskeletal system, Dr. Balderman noted that his cervical spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. Tr. at 357. Plaintiff had no scoliosis, kyphosis, or abnormality in the thoracic spine, had good lateral and rotary movements, tested negative for straight leg raise bilaterally; had full range of motion of hips, knees, and ankles bilaterally; had no evident subluxations, contractures, ankylosis or thickening; had stable, nontender joints; and had no redness, heat, swelling, or effusion. Tr. at 357. In relevant part, Dr. Balderman opined that Plaintiff had mild limitations in changing the position of his head and mild limitations in bending and lifting. Tr. at 357.

Dr. Nikita Dave examined Plaintiff several years later on October 1, 2019. Tr. at 775. Dr. Dave noted that Plaintiff appeared to be in no acute distress, but did have an abnormal gait, showing a mild right foot drop and mild compensatory gait with increased right knee flexion and hip flexion. Tr. at 776. Plaintiff was unable to perform heel gait on his right side and could squat only "½ down." Tr. at 776. His stance was normal; he used no assistive devices, needed no help changing or getting on and off the exam table, and was able to rise from his chair without difficulty. Tr. at 776. An examination of Plaintiff's lumbar spine revealed 10 degree extension, 50 degree flexion, 15 degree lateral flexion, and 20 degree rotation. Tr. at 777. Plaintiff had full range of motion in his shoulders, elbows, forearms, wrists (bilaterally), hips, knees, and ankles (bilaterally). Tr. at 777. Dr. Dave opined that Plaintiff had moderate limitations for prolonged sitting, prolonged standing, repetitive bending forward, lifting and carrying and that he should avoid ladders, unprotected heights, and slippery wet surfaces. Tr. at 777-78.

The ALJ assigned both opinions moderate weight. Tr. at 553. Although the ALJ noted that Dr. Balderman's opinion was "vague and comparatively distant," he found that it was otherwise "generally consistent with a limitation to light work prior to July 16, 2017." Tr. at 553. The ALJ noted that "the updated medical record at the current hearing level reveals additional lower extremity complaints and abnormalities consistent with a reduced range of sedentary work." Tr. at 553. In giving Dr. Dave's opinion moderate weight, the ALJ reasoned that the doctor personally examined Plaintiff and that the limitations he found "are consistent with the record as a whole since July 16, 2017, though not before, as the updated record reveals ongoing difficulties with drop

foot" which limited Plaintiff to "a reduced range of sedentary work since [that date]."  Tr. at 553.

Plaintiff argues that this case must be remanded because the ALJ failed to "reconcile" Dr. Balderman's and Dr. Dave's opinions with the bifurcated RFC.  Dkt. No. 14-1, p. 19.  This Court does not agree.  The Second Circuit Court of Appeals has made clear that in evaluating the medical evidence, an ALJ is not bound to include in the RFC finding every specific limitation assessed by an examiner, so long as the ALJ's reasoning is consistent with the record as a whole*. See Barry v. Colvin*, 606 F. App'x 621, 624 (2d Cir. 2015).  Relatedly, the Circuit Court has held that an ALJ may reject portions of medical opinions that are unsupported or inconsistent with objective evidence in the record, while accepting those portions that are supported by substantial evidence.  *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (stating that it is within the ALJ's discretion to sort through and resolve conflicts in the evidence); *see also Cosme v. Colvin*, 15-cv-6121P, 2016 WL 4154280, *12 (W.D.N.Y. 2016) (rejecting the argument that the ALJ inappropriately adopted only those limitations that supported his ultimate finding, where the decision demonstrated that the ALJ carefully considered conflicting evidence and provided the basis for his decision to adopt only portions of the medical opinion).

Having reviewed the record, this Court finds that the ALJ's reasoning, including the divided RFC, is consistent with the objective medical evidence in the record, including Dr. Balderman's and Dr. Dave's examinations, which revealed largely normal findings in Plaintiff's functioning.  *See* 20 C.F.R. §§ 404.1527(c)(3), (4),

416.927(c)(3), (4); see also Petrie v. Astrue, 412 F. App'x 401, 405 (2d Cir. 2011); Mongeur v. Heckler, 722 F.2d 1033, 1039 (2d Cir. 1983) (holding that the report of a consultative examiner may constitute substantial evidence to support an ALJ's findings when supported by other record evidence).  As the ALJ noted, on physical examination, Plaintiff was routinely doing well; had no leg cramps, shoulder pain, or weakness; no clubbing, cyanosis, swelling, deformity of joints, tenderness, or edema in the extremities; no tenderness to palpitation along his lumbar spine; full (5/5) motor strength in the upper and lower extremities; and walked with a normal gait.  Tr. at 453, 459, 462-68, 472, 496-98, 515, 536, 1026, 1029, 1032, 1035-36, 1042, 1047, 1050- 51, 1054, 1057.  The ALJ also noted that Plaintiff generally experienced good results from his wrist and back surgeries, with little need for left wrist follow-up and improvement following his lumbar laminectomy.  Tr. at 550.

In the months after his back surgery in June 2017, Plaintiff was doing well post-operatively and he stopped using his cane by December 2017.  Tr. at 550-51, 996.  By February 2018, he reported improvement in his back pain while taking Ibuprofen and Tramadol for pain control.  Tr. at 1039.  Six months later on August 10, 2018, Plaintiff reported that he no longer followed up with pain management, and stated that physical therapy helped, and that Ibuprofen was working well.  Tr. at 1035.  Plaintiff had only three follow-up sessions in 2019, where exams revealed no edema or tenderness in the extremities, and no tenderness to palpitation, muscle spasms, or gross deformity in his lumbar spine.  Tr. at 1026.  He had no other pain management sessions or follow-up visits in the relevant period.  Plaintiff also testified at his

administrative hearing that he experienced improvement after his back surgery.  Tr. at 573.

The ALJ cited to other evidence supporting the conclusion that Plaintiff was capable of limited ranges of light or sedentary work, including Plaintiff's representation that he was able to maintain his own personal grooming (including bathing and feeding himself), prepare simple meals on a daily basis, go outside once a week by riding in a car, and that that he could pay bills, count change, and handle a savings account.  Tr. at 293-96, 548.  Plaintiff also testified that his daughter visits him on the weekends, and he indicated in his function report that his daily hobbies include reading, watching television, playing video games, and doing crossword puzzles.  Tr. at 296, 548, 570-71.  It was entirely appropriate for the ALJ to consider Plaintiff's activities of daily living in making his disability assessment.  *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (holding that an adjudicator properly considers the individual's daily activities); SSR 16-3p; *see also Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013) (holding that Plaintiff's activities of daily living indicate his true level of both physical and mental functioning).

The ALJ also recognized that Plaintiff's doctors often recommended very conservative treatments and that he went for long periods of time without any treatment at all.  For example, after his back surgery in June 2017, Plaintiff required only physical therapy and medications such as Tramadol and Ibuprofen or applied heat to control his pain.  Tr. at 572, 582, 775, 1035, 1039.  Plaintiff also indicated in his function report that medication relieved his pain for up to six hours; he used a cane only when his gout

flared up; and wearing a back brace, using a cane, using muscle rubs, and taking medication relieved his pain symptoms. Tr. at 298-302. The fact that a plaintiff has received only conservative treatment is evidence that can weigh against his or her allegations of disabling symptoms. *See Penfield v. Colvin*, 563 F. App'x 839, 840 (2d Cir. 2014); *Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. 2008).

Plaintiff also reported improvement in his back symptoms after his June 2017 surgery, both in his treatment records and at his administrative hearing. Tr. at 550, 573, 961, 1039, 1050. In August 2018, just a little over a year after his back surgery, Plaintiff reported that physical therapy helped and the Ibuprofen was working well, and accordingly, he no longer followed up with pain management. Tr. at 1035. Plaintiff had only two follow-up sessions for his back pain in 2018 (in February and August), and three follow-up sessions in 2019 (in March, April, and November). Tr. at 551, 1026-42. He had no other pain management or follow-up sessions during the relevant period.

The ALJ was well within his authority to consider Plaintiff's treatment, or lack thereof, in determining whether he was capable of performing work. *See* 20 C.F.R. § 404.1529(c)(3)(iv)-(v), 416.929(c)(3)(iv)-(v) (stating that an adjudicator properly considers the treatment modalities utilized, and the effectiveness of treatment to relieve pain and other symptoms); SSR 16-3p ("If the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints . . . we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall record."); *see also Arnone v. Bowen*, 882

F.2d 34, 39 (2d. Cir. 1989) (holding that a claimant's failure to seek treatment significantly undermines a claim of disability); *Penfield*, 563 F. App'x at 840; *Netter*, 272 F. App'x at 56.

Relatedly, it cannot be said that the second RFC determination finding Plaintiff capable of a limited range of sedentary work is fundamentally inconsistent with Dr. Dave's opinion that Plaintiff had a moderate limitation for sitting. As an initial matter, courts frequently find that mild-to-moderate limitations, such as those assessed by Dr. Dave, are consistent with an RFC for a full range of light work, which is more rigorous than the reduced range of sedentary work found here. *See, e.g., Nelson v. Colvin*, No. 12-CV-1810 JS, 2014 WL 1342964, at *12 (E.D.N.Y. Mar. 31, 2014) (stating that "the ALJ's determination that [p]laintiff could perform 'light work' is supported by [the physician's] assessment of mild-to-moderate limitation for sitting, standing, walking, bending, and lifting weights on a continued basis"); *see also Kociuba v. Comm'r of Soc. Sec.*, No. 5:16-CV-0064 (GTS), 2017 WL 2210511, at *8 (N.D.N.Y. May 19, 2017), citing *Gurney v. Colvin*, No. 14-CV-688S, 2016 WL 805405, at *3 (W.D.N.Y. Mar. 2, 2016) (finding no error in an RFC for light work where a source opined that plaintiff had moderate limitations in the ability to perform repetitive heavy lifting, bending, reaching, pushing, pulling, or carrying); *Harrington v. Colvin*, 2015 WL 790756, *13 (W.D.N.Y. Feb. 25, 2015) (holding that moderate limitations for sitting, standing, and walking would not prevent claimant from sitting, standing, or walking for six hours a day); *Crews v. Astrue*, 2012 WL 1107685, *17 (S.D.N.Y. Mar. 27, 2012) (finding that the RFC for light work was consistent with the doctor's opinion that the claimant had mild-to-moderate limitations for prolonged periods of sitting, standing, or climbing stairs).

The ALJ provided greater deference to Plaintiff by concluding that he was restricted to a limited range of sedentary work rather than a full range of light work. Although the ALJ did not provide a sit-stand option, this does not require remand. During the hearing, the VE explicitly identified three sedentary jobs that exist in significant numbers in the national economy "where the hypothetical claimant can sit for 45 minutes at a time and then must be permitted to stand briefly for up to two minutes before returning to a seated position," specifically, the jobs of document preparer, printed circuit board screener, and a final inspector. Tr. at 595. Put another way, even if the ALJ had included a sit-stand option, Plaintiff would still not be considered disabled from all work. So any alleged error on the ALJ's part is harmless.

Plaintiff next argues that the ALJ had no basis for formulating two different RFCs during the relevant period, and that the date Plaintiff's condition allegedly worsened, July 16, 2017, is "arbitrary" and "meaningless." Dkt. No. 14-1, p. 23. Even if this Court were to agree that the date was not tied to any particular medical event, the ALJ's decision to bifurcate Plaintiff's RFC into two discrete periods does not require remand because at his worst, Plaintiff was still capable of working. That is, even if Plaintiff had an RFC of sedentary work with a sit-stand option throughout the entire relevant period, he could still, according to the VE, perform the jobs of document preparer, printed circuit board screener, and final inspector. Tr. at 595.

In any case, the ALJ explained why he found, based on both the opinion evidence and the medical evidence of record, that Plaintiff's condition worsened during the near 10-year period, resulting in two different RFCs. For instance, relying on Dr.

14

Balderman's and Dr. Dave's opinions and other clinical findings in the record, the ALJ limited Plaintiff to a range of light work with additional exertional limitations between May 29, 2010 through July 15, 2017, reasoning that, "[t]hrough July 15, 2017, the claimant's history of spinal pain and surgery, left knee DJD and sprain, left wrist fracture and repair, and obesity is consistent with a limitation to light work with occasional postural activities and climbing of all types." Tr. at 550. The ALJ further explained that Dr. Balderman's June 2011 opinion that Plaintiff had mild limitations in changing the position of his head, bending, and lifting, was generally consistent with a limitation to light work prior to July 16, 2017. Tr. at 357, 553. Moreover, to account for Plaintiff's wrist injury and surgery, the ALJ limited Plaintiff to no more than frequent handling and fingering with the non-dominant left upper extremity. Tr. at 547, 550. Plaintiff was also limited to occasional climbing of ladders, ropes, scaffolds, ramps or stairs; and occasional stooping, crouching, balancing, kneeling, or crawling. Tr. 547.

However, as the ALJ also explained, the updated medical records and Dr. Dave's October 2019 opinion finding moderate limitations in prolonged sitting, standing, repetitive forward bending, lifting, and carrying, were consistent with a reduced range of sedentary work. Tr. at 553, 778. Specifically, the later records revealed that Plaintiff had difficulties with drop foot and that "the record contains evidence of worsened symptoms secondary to the claimant's back injury . . . ." Tr. at 551, 553. "Given these additional right lower extremity abnormalities," the ALJ explained, "the undersigned finds that beginning on July 16, 2017, the claimant was additionally limited to no more than sedentary work with no climbing of ladders, ropes or scaffolds, and no exposure to wetness or dangerous hazards." Tr. at 551. Plaintiff was also limited to occasional

15

climbing of ramps or stairs; and occasional stooping, crouching, balancing, kneeling, or crawling.  Tr. at 547.  Accordingly, this Court finds that the ALJ properly explained why, and how, he accounted for two different RFCs during the relevant period.

As demonstrated above, the ALJ thoroughly discussed the objective medical evidence and afforded the proper weight to the opinion evidence when determining the RFC findings; and substantial evidence supports the ALJ's RFC determinations.  Plaintiff clearly disagrees with the ALJ's evaluation of the evidence.  However, the substantial evidence standard is so deferential that "there could be two contrary rulings on the same record and both may be affirmed as supported by substantial evidence."  *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 127 (2d Cir. 2012).  That is, "once an ALJ finds the facts, [a reviewing court] can reject those facts only if a reasonable factfinder **would have to conclude otherwise**."  *Brault*, 683 F.3d at 448 (emphasis added).  This case does not present such a situation.  For all of the foregoing reasons, this Court finds that the ALJ's decision is free from legal error and is supported by substantial evidence.

## CONCLUSION

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is DENIED, and the Commissioner's motion for judgment on the pleadings (Dkt. No. 16) is GRANTED.  The Clerk of the Court is directed to close this case.

**SO ORDERED.**

DATED:     Buffalo, New York
           February 11, 2022


                                        *s/ H. Kenneth Schroeder, Jr.*
                                        **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**